IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| HUMAN DIFFERENTIAL INTELLIGENCE LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>THE GAP, INC.,<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§  Case No. 6:20-cv-00307-ADA<br>§<br>§<br>§<br>§<br>§<br>§ |

**THE GAP, INC.'S**
**<u>MOTION TO DISMISS CORRECTED FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................ 2

    A.    The Asserted Patents ................................................................................. 2

    B.    Gap's Alleged Acts .................................................................................... 3

III.  ARGUMENT ......................................................................................................... 4

    A.    The CFAC Does Not Adequately Plead Direct Infringement ................... 4

        1.    The CFAC Fails To Plead Direct Infringement Of
             The '141 Patent Because It Misquotes Google's Website ......................... 4

        2.    The CFAC Fails To State A Claim For Direct Infringement
             Of The '861 Patent Because It Alleges Google Performs Every Step ........ 6

            a)    Joint Infringement Does Not Include A
                Third Party Practicing Every Step Of A Claimed Method ............. 6

            b)    The CFAC Alleges That Google
                Performs Every Step Of The '861 Patent Claim............................. 7

        3.    The CFAC Does Not Plead Joint Infringement Because It
             Does Not Allege Facts Showing Gap Is Liable For Google's Service ....... 8

            a)    A Joint Infringement Complaint
                Must Allege Facts Making It Plausible To
                Hold A Defendant Liable For Another Party's Actions ................. 8

            b)    The CFAC Fails To Plead Joint Infringement By Contract............ 9

            c)    The CFAC Fails To Plead Joint Infringement By Agency ........... 11

            d)    The CFAC Fails To Plead Joint Infringement By Conditioning
                Receipt Of A Benefit Or Participation In A Business Activity
                Upon Performance Of Step(s) Of The Patented Method ............. 12

            e)    The CFAC Fails To Plead
                Joint Infringement By Joint Enterprise ......................................... 14

    B.    The CFAC Fails To Plead Indirect Infringement ................................... 15

        1.    The CFAC Fails To Plead A Predicate Direct Infringement ................... 15

a)    The CFAC Fails To Plead
Direct Infringement Of The '141 Patent ....................................... 16

b)    The CFAC Fails To Plead
Direct Infringement By Gap Website End-Users ......................... 16

2.    The CFAC Fails To Plead Induced Infringement
Because It Does Not Plead Intent Or Knowledge Of Infringement .......... 17

IV.    CONCLUSION ............................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Addiction & Detoxification Inst. LLC v. Carpenter*,
620 F. App'x 934 (Fed. Cir. 2015) ................................................................. 19

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ............................... 19

*Air Liquide Mexico S. de R.L. de C.V. v. Talleres Willie, Inc.*,
No. CV H-14-211, 2015 WL 8763961 (S.D. Tex. Dec. 15, 2015)................................. 14

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015).............................................................. passim

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................... 4

*Boynton v. Headwaters, Inc.*,
243 F. App'x 610 (Fed. Cir. 2007) .......................................................... 17

*CBA Envtl. Servs., Inc. v. Toll Bros. Inc.*,
403 F. Supp. 3d 403 (D.N.J. 2019) .......................................................... 10

*Clear With Computers, LLC v. Bergdorf Goodman, Inc.*,
2010 WL 3155888 (E.D. Tex. Mar. 29, 2010) ............................................... 16

*Confident Techs., Inc. v. Fandango Media, LLC*,
No. LACV1803035JAKAGRX, 2018 WL 6430539 (C.D. Cal. Aug. 20, 2018) .............. 9

*Cox v. Bank of Am., N.A.*,
No. CV H-16-2624, 2017 WL 1622043 (S.D. Tex. May 2, 2017)................................. 5

*De La Vega v. Microsoft Corp.*,
Nos. W-19-CV-00612-ADA, -00617-ADA,
2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)........................................ 1, 4, 9

*Finjan, Inc. v. Sophos, Inc.*,
244 F. Supp. 3d 1016 (N.D. Cal. 2017) ...................................................... 8

*Free Stream Media Corp. v. Alphonso Inc.*,
No. 17-CV-02107-RS, 2019 WL 4645725 (N.D. Cal. June 3, 2019).............................. 10

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ............................................................................... 5

*Gharb v. Mitsubishi Elec. Automation, Inc.*,
    No. 10 C 07204, 2012 WL 1986435 (N.D. Ill. June 4, 2012) ......................... 19

*Google LLC v. Princeps Interface Techs. LLC*,
    No. 19-CV-06566-EMC, 2020 WL 1478352 (N.D. Cal. Mar. 26, 2020)........................ 19

*In re Bill of Lading Transmission*,
    681 F.3d 1323 (Fed. Cir. 2012)........................................................................... 16

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017)........................................................................... 18

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014)............................................................................................ 15

*Lyda v. CBS Corp.*,
    838 F.3d 1331 (Fed. Cir. 2016)............................................................... passim

*Meyer v. Holley*,
    537 U.S. 280 (2003)............................................................................................ 11

*Realtime Data, LLC v. Stanley*,
    721 F. Supp. 2d 538 (E.D. Tex. 2010)................................................................ 16

*Rearden LLC v. Walt Disney Co.*,
    293 F. Supp. 3d 963 (N.D. Cal. 2018) ................................................................. 8

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)............................................................................... 5

*Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*,
    422 F. Supp. 3d 1191 (W.D. Tex. 2019)............................................................... 6

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984).............................................................................................. 7

*Superior Industries, LLC v. Thor Global Enterprises Ltd.*,
    700 F.3d 1287 (Fed. Cir. 2012)........................................................................... 18

*Two-Way Media Ltd v. Verizon Commc'ns Inc.*,
    No. CV 14-1212-RGA-MPT, 2015 WL 2375805 (D. Del. May 18, 2015).................... 10

*Uniloc USA, Inc. v. Apple Inc.*,
    No. C 18-00359 WHA, 2018 WL 2047553 (N.D. Cal. May 2, 2018)........................... 19

Statutes

35 U.S.C. § 271 .................................................................................................................. 8, 10

Under Federal Rule of Civil Procedure 12(b)(6), defendant The Gap, Inc. ("Gap"), moves to dismiss the Corrected First Amended Complaint ("CFAC") (ECF No. 14) filed by plaintiff Human Differential Intelligence LLC ("HDI") for failure to plead a claim.

## I.    **INTRODUCTION**

Google's reCAPTCHA v2 service is designed to permit websites to distinguish between bots and human users. Gap uses that service for its website. HDI's CFAC fails to state a claim for direct infringement against *Gap* because it accuses *Google's* reCAPTCHA v2 service of infringement but does not allege facts showing that Gap is liable for Google's operation of its service. While it is not surprising that an apparel company is not responsible for how a technology company operates its bot-detecting service, this disconnect dooms the CFAC, and the Court should dismiss it.

The CFAC's direct infringement claims for both patents should be dismissed because they fail to state a claim of joint infringement. This doctrine permits finding a defendant liable for patent infringement when multiple actors participate in infringement, *if* the alleged infringer is responsible for the other actor's performance. Accordingly, a joint infringement complaint must allege "facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016); *De La Vega v. Microsoft Corp.*, Nos. W-19-CV-00612-ADA, -00617-ADA, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 11, 2020) (quoting *Lyda*).

The CFAC accuses *Google's* reCAPTCHA v2 service of infringing, but does not allege facts sufficient to infer that Gap and Google have a contract that controls Google's service, that

Google is Gap's agent, that Gap establishes the manner or timing of Google's performance of its service, or that Gap and Google have formed a joint venture.

The CFAC's claim asserting direct infringement of U.S. Patent No. 8,752,141 ("'141 patent") also should be dismissed because the CFAC misquotes a Google document to allege Google performs the asserted claim's "calculating" step.

The CFAC's claim asserting direct infringement of U.S. Patent No. 9,192,861 ("'861 patent") also should be dismissed because the CFAC alleges that Google performs *every* step of the patent's asserted claim, so joint infringement does not apply in that circumstance.

The CFAC's indirect infringement counts also should be dismissed because the CFAC does not include factual allegations of an underlying direct infringement or that Gap intended and knew about one.

## II.    FACTUAL BACKGROUND

### A.    The Asserted Patents

The CFAC asserts the '141 patent and the '861 patent. (ECF No. 14 at ¶¶ 10, 11.) It alleges they are directed to "methods for distinguishing a human from a computer using a graphical/pictorial and/or motion-based verification or challenge system(s)." (*Id.* at ¶ 13.) These types of tests are known generally as "CAPTCHA" (Completely Automated Public Turing Test to Tell Computers and Humans Apart).

The CFAC asserts claim 1 of the '141 patent and claim 1 of the '861 patent, which focus on back-end methods for providing a CAPTCHA. (*Id.* at ¶¶ 61, 65, 72, 76, 80, 90.) Claim 1 of the '141 patent requires:

> 1. A method of testing recognition of images for a Completely Automatic Public Turing Test To Tell Humans And Computers Apart (CAPTCHA) system comprising:
>   a. automatically electing an electronic image for a participant

with a computing system, wherein said electronic image
comprises a set of imagery data other than words, and
wherein said electronic image is configured such that a
subset of said set of imagery data for said electronic image
can be made perceptible in a first image state;

    b. associating said electronic image with one or more concepts;

    c. presenting said electronic image in said first image state and
progressively revealing information over a first time period
within an interface for said participant using said computing
system;

    d. automatically processing responses from the participant with
the computing system to correlate an accuracy of guesses
from said participant for said one or more concepts
associated with said electronic image; and

    e. calculating a percentage of participants able to decode and
accurately guess said one or more concepts within a
predetermined time.

(ECF No. 14-1 at 26:18–40.)

Claim 1 of the '861 patent requires:

1. A method of providing a motion and/or orientation-based
Completely Automatic Public Turing Test To Tell Humans And
Computers Apart (CAPTCHA) challenge on a portable computing
device comprising:

    a. automatically electing a manipulation challenge for a user with
the portable computing device, wherein said manipulation
challenge includes a set of physical manipulation instructions
for the portable computing device for the user;

    b. automatically processing sensory data associated with user
movements and/or manipulations of the portable computing
device; and

    c. automatically determining if said user movements and/or
manipulations from the user meet a required threshold for
satisfying said set of manipulation instructions to qualify
said user as a human.

(ECF No. 14-2 at 26:14–29.)

## B.   Gap's Alleged Acts

The CFAC alleges Gap's website "implements Google's reCAPTCHA v2 framework."

(ECF No. 14 at ¶ 16.) A screenshot included in paragraph 16 of the CFAC shows Gap's website

calls Google's website, at www.google.com/recaptcha/api.js, to implement Google's service.

The CFAC describes two of Google reCAPTCHA services. Paragraph 20 describes nine-

tile reCAPTCHA images where users select the images associated with a provided concept and click "verify." Paragraph 21 describes a checkbox reCAPTCHA where users check a box labeled "I'm not a robot."

The CFAC then describes how Gap allegedly infringes the patents by using Google's reCAPTCHA v2 service. (*Id.* ¶¶ 22–29 ('141 patent, claim 1); ¶¶ 30–35 ('861 patent, claim 1).)

## III.  <u>ARGUMENT</u>

Rule 8 requires complaints to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Complaints must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555.

### A.    <u>The CFAC Does Not Adequately Plead Direct Infringement</u>

#### 1.    <u>The CFAC Fails To Plead Direct Infringement Of The '141 Patent Because It Misquotes Google's Website</u>

To plead joint infringement, a complaint must plead, in part, "facts sufficient to allow a reasonable inference that all steps of the claimed method are performed." *Lyda*, 838 F.3d at 1339; *see also De La Vega*, 2020 WL 3528411, at *4. The CFAC's Count 1 allegations that Google performs claim 1 of the '141 patent's "calculating" step are not plausible because they rely on misquoting a Google document.

Claim 1 of the '141 patent recites, in part, "calculating a percentage of participants able to decode and accurately guess said one or more concepts within a predetermined time." (ECF No. 14-1 at 26:38–40.)

The CFAC alleges Google performs this "calculating" step when "Google and/or a Google server(s)/computer(s) tabulates the total number of participants that used reCAPTCHA v2 on Defendant's website(s) 'and the percentage of end-users able to solve the captcha within the allowable time period.' *See, e.g.*, https://developers.google.com/recaptcha/docs/faq." (ECF No. 14 at ¶ 28.)

The referenced Google reCAPTCHA Frequently Asked Questions webpage, https://developers.google.com/recaptcha/docs/faq, does not contain the language the CFAC allegedly quotes.[1] Nowhere does this webpage state that Google calculates a "percentage of end-users able to solve the captcha within the allowable time period," or make any statement that resembles that quotation. Because the CFAC's allegations are not included in the document, Count 1, for direct infringement of the '141 patent, should be dismissed. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("In ruling on a 12(b)(6) motion, a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.") (internal quotations omitted); *Cox v. Bank of Am., N.A.*, No. CV H-16-2624, 2017 WL 1622043, at *2 (S.D. Tex. May 2, 2017) ("It is a well settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the

---

[1] Gap includes a copy of the Frequently Asked Questions page as Exhibit 1 to the Declaration of Raymond Bernal ("Bernal Decl."), filed herewith. Because the CFAC references this document, it must be considered on a motion to dismiss. *See, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("When reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

exhibit trumps the allegations.") (citation omitted).

### 2. The CFAC Fails To State A Claim For Direct Infringement Of The '861 Patent Because It Alleges Google Performs Every Step

The CFAC alleges *Google* performs every step of claim 1 of the '861 patent. (ECF No. 14 at ¶¶ 30–35.) So the direct infringement claim fails, because *indirect* infringement is what potentially applies when a patent holder seeks to hold a defendant liable for a third party's acts.

As this Court has indicated, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, 422 F. Supp. 3d 1191, 1198 (W.D. Tex. 2019), *reconsideration denied*, No. W-19-CV-00257-ADA, 2020 WL 278481 (W.D. Tex. Jan. 10, 2020) (citations omitted).

### a) Joint Infringement Does Not Include A Third Party Practicing Every Step Of A Claimed Method

The differences between types of patent infringement demonstrate that the CFAC attempts to plead a direct infringement claim that does not exist.

*Direct* infringement under 35 U.S.C. § 271(a) requires all steps of a claimed method be "performed by or attributable to a single entity," namely the party accused of direct infringement. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). *Joint* infringement (also known as divided infringement) is a type of direct infringement "[w]here *more than one actor* is involved in practicing the steps." *Id.* (emphasis added); *see also Lyda v. CBS Corp.*, 838 F.3d 1331, 1338 (Fed. Cir. 2016) ("To prove joint infringement, where *multiple actors* are involved in practicing the claim steps, the patent owner must show that the acts of one party are attributable to the other such that a single entity is responsible for the infringement.") (emphasis added). In *Akamai*, the defendant performed some steps, and the Federal Circuit considered the standard for determining whether the defendant was responsible for a third party's performance of the "remaining" method steps. 797 F.3d at 1025.

Under *indirect* infringement, a party is liable for infringement when a third party practices a patented method, if the party induced or contributed to the third party's infringement. 35 U.S.C. §§ 271(b),(c); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434–35 (1984) (discussing how these sections of the Patent Act render individuals "liable for infringement committed by another" person).

**b)**     **The CFAC Alleges That Google**
<u>**Performs Every Step Of The '861 Patent Claim**</u>

The CFAC alleges facts showing that Google performs every step of claim 1 of the '861 patent. (ECF No. 14 at ¶¶ 30–35.) As a result, the Court should dismiss Count 4, which claims direct infringement of the '861 patent.

Claim 1 of the '861 patent requires performance of three steps: electing a manipulation challenge for a user, processing the user's movements associated with that challenge, and determining if those movements meet a required threshold. (Each step has additional requirements, as set out in the complete claim language.) (ECF No. 14-2 at 26:14–29.)

While the CFAC alleges summarily for each step of the method that Gap "performs this step and/or directs Google and/or a Google server(s)/computer(s) to perform this step[]," (ECF No. 14 at ¶¶ 30, 32, 34), the more specific allegations for each step support only Google performing the step:

- For the election step, the CFAC alleges that a script from Gap's website sends a "request" for Google "to automatically elect a notion-based captcha, in the manner claimed in the '861 Patent." (*Id.* ¶ 30.)

- The second step is "automatically processing sensory data associated with user movements and/or manipulations of the portable computer device." (ECF No. 14-2 at 26:23–25.) For this step, the CFAC alleges Gap receives data about a user's

7

scroll and other movements, and then passes that data to Google with a "request" for Google to verify that the user successfully solved the challenge. (ECF No. 14 at ¶ 32.)

- For the determining step, the CFAC alleges that Gap sets a security preference, and then sends a "request" to Google, which "causes" Google "to determine if the end-user's movements and/or manipulation satisfied the motion-based captcha at the specified security threshold." (*Id.* ¶ 34.)

The CFAC thus alleges that Google performs each claim step. Count 4 must be dismissed because a claim for direct infringement does not exist unless the defendant itself performs at least some of the claimed method steps. *See, e.g.*, *Finjan, Inc. v. Sophos, Inc.*, 244 F. Supp. 3d 1016, 1044 (N.D. Cal. 2017) (noting that an attempt to show direct infringement by alleging that defendant's customers performed all of the method steps failed, as it was an indirect infringement claim, rather than a divided direct infringement claim); *see also Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963, 973 (N.D. Cal. 2018) (same).

### 3. The CFAC Does Not Plead Joint Infringement Because It Does Not Allege Facts Showing Gap Is Liable For Google's Service

The CFAC does not plead direct infringement of either asserted patent because it does not allege facts that would support a finding under any of the four recognized joint infringement theories that Gap should be liable for Google's operation of its reCAPTCHA v2 service. As a result, the Court should dismiss Counts 1 and 4 in their entirety for this reason as well.

### a) A Joint Infringement Complaint Must Allege Facts Making It Plausible To Hold A Defendant Liable For Another Party's Actions

Joint infringement is an exception to the rule that direct infringement of a method claim requires the alleged infringer to perform all its steps. Under this exception, multiple actors can

perform the required method if the alleged infringer either directs or controls the other actor's performance or they form a joint enterprise. *Akamai*, 797 F.3d at 1022; *see also, e.g.*, *Confident Techs., Inc. v. Fandango Media, LLC*, No. LACV1803035JAKAGRX, 2018 WL 6430539, at *3 (C.D. Cal. Aug. 20, 2018) (dismissing complaint alleging infringement based on a defendant's use of Google's reCAPTCHA technology that failed to adequately plead joint infringement).

Direction and control can occur under three circumstances: (1) through an agency relationship; (2) through a contract; or (3) "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai*, 797 F.3d at 1023.

A joint enterprise requires: (1) an agreement among the members of the group; (2) a common purpose; (3) a community of pecuniary interests; and (4) an equal right to a voice and control in the direction of the enterprise. *Id.*

At the pleading stage, "[a] claim of joint infringement thus requires pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *Lyda*, 838 F.3d at 1339; *see also*, *De La Vega*, 2020 WL 3528411, at *4.

A complaint cannot merely parrot the words "direction and control." It must allege facts that, if proven, would support a finding of direction and control. In *Lyda*, the Federal Circuit affirmed the dismissal of a complaint that alleged direction and control "without factual support," in a conclusory way. 838 F.3d at 1340.

**b)      The CFAC Fails To Plead Joint Infringement By Contract**

The CFAC alleges Gap and Google have a contract "relating to the implementation and

use of the reCAPTCHA v2 service" by Gap. (ECF No. 14 at ¶ 42.) The alleged contract, however, does not mention the service, let alone amount to a contract "to perform one or more steps of a claimed method." *Akamai*, 797 F.3d at 1023.

      While joint infringement can result from a contract, not any contract will do. Instead, the contract must require performance of the asserted patent claim steps. To state a claim for joint infringement, a contract must control the details of the third party's work to such an extent the third party cannot "cannot perform the work as he chooses." *CBA Envtl. Servs., Inc. v. Toll Bros. Inc.*, 403 F. Supp. 3d 403, 418 (D.N.J. 2019); *see also Free Stream Media Corp. v. Alphonso Inc.*, No. 17-CV-02107-RS, 2019 WL 4645725, at *2 (N.D. Cal. June 3, 2019) (finding patent owner failed to show that third party was "under any contractual obligation to practice any element of the patent"); *Two-Way Media Ltd v. Verizon Commc'ns Inc.*, No. CV 14-1212-RGA-MPT, 2015 WL 2375805, at *6 (D. Del. May 18, 2015) (dismissing joint infringement claim where contractual relationships did not "not require that the third parties perform the enumerated steps of the patents-in-suit or confer on defendants the right to supervise and interfere with the third parties' work").

      The CFAC alleges Google's Terms of Service, https://policies.google.com/terms,[2] is the contract through which Gap directs and controls Google to infringe the asserted patents. (ECF No. 14 at ¶¶ 42, 45.) However, these terms do not mention Google's reCAPTCHA v2 service, and do not require Google to perform the patent claim steps. Instead, they broadly address use of any Google service (such as its search and map services). (Bernal Decl. Ex. 2.) The only commitments Google makes are general, such as to provide services "designed to work together" and to "develop[] new technologies and features to improve our service." (*Id.* at 5.)

---

[2] Gap includes a copy of the Terms of Service as Exhibit 2 to the Bernal Decl.

The CFAC's allegation that Gap directs and controls Google to practice the asserted patents through the Google Terms of Service is not a plausible factual allegation. As a result, the Court should hold the CFAC does not allege joint infringement based on a contract theory.

    **c)**     <u>**The CFAC Fails To Plead Joint Infringement By Agency**</u>

The CFAC alleges Gap and Google have "agency relationships," but fails to plausibly allege facts supporting any agency relationship. (ECF No. 14 at ¶ 45.)

For joint infringement based on agency, "traditional agency principles" must serve as the basis for finding agency. *Akamai*, 797 F.3d at 1023. Traditional agency principles require, among other things, "the manifestation of consent by one person to another that the other shall act *on his behalf* [], and consent by the other so to act." *Meyer v. Holley*, 537 U.S. 280, 286 (2003) (internal quotations omitted) (emphasis in original).

The CFAC does not plead facts that plausibly support an agency relationship. It cites the Google Terms of Service discussed above as demonstrating an agency relationship. Specifically, it alleges that "Defendant has acknowledged and agreed that Google acts on behalf of Defendant for purposes of using reCAPTCHA v2 technology on Defendant's website(s), and that Defendant is responsible for any unlawful use or infringement of any third party's intellectual property rights. See, e.g., https://policies.google.com/terms; https://policies.google.com/terms/archive." (ECF No. 14 at ¶ 44.)

However, nothing in the Google Terms of Service suggest Google is Gap's agent in any respect, let alone when implementing Google's reCAPTCHA v2 service. (Bernal Decl. Ex. 2.) The Terms of Service do not mention Google's reCAPTCHA v2 service. Further, instead of assenting to Gap control over Google, the Terms of Service make clear that Google believes it has the right to operate its services as it sees fit. Other than a handful of vague, high-level

commitments about trying to improve its services and to give notice about significant changes, Google explicitly disclaims other commitments, stating: "We don't make any other commitments about our services." (*Id.* at 12.) Google also imposes "basic rules of conduct" on entities who use its services, rather than assenting to Gap's or anyone else's control. (*Id.* at 5.)

As the Terms of Service do not mention agency or reCAPTCHA, and indicate that Google makes limited commitments rather than taking on an agency role, the Court should hold the CFAC does not allege joint infringement based on an agency theory.

> **d)** **The CFAC Fails To Plead Joint Infringement By Conditioning Receipt Of A Benefit Or Participation In A Business Activity Upon Performance Of Step(s) Of The Patented Method**

The CFAC alleges Gap "directs or controls Google by conditioning receipt of a benefit or participation in some business activity upon performance of a step or steps of a patented method and establishes the manner and timing of that performance." (ECF No. 14 at ¶ 46.) This allegation tracks one of the four approaches for proving joint infringement, but the CFAC does not allege facts that make this allegation plausible, as required by *Lyda*. 838 F.3d at 1339.

The CFAC alleges a variety of benefits,[3] but the only benefit it alleges Google receives is "'using the [reCAPTCHA] solutions to digitize text, annotate images, and build machine-learning datasets.' *See, e.g.*, https://support.google.com/recaptcha/?hl=en." (*Id.* at ¶ 39 (alteration in original).) While the CFAC alleges that Google receives this benefit, it fails to allege facts that make it plausible that (1) Google receives this benefit, (2) that Google receives the benefit as a result of Gap's use of the reCAPTCHA v2 service, (3) that Gap conditions Google's receipt of

---

[3] The benefits allegedly received by Gap and Gap's end-users or customers (ECF No. 14 at ¶¶ 40–41) are not relevant to the analysis of whether Gap conditions Google's receipt of a benefit on Google's performance.

that benefit upon performance of patent claim steps, or (4) that Gap establishes the manner or timing of Google's performance.

First, the CFAC alleges a Google support page states Google receives a benefit, but that page says no such thing. (ECF No. 14 at ¶ 39.) The CFAC partially quotes a sentence from that page, which states in its entirety, "reCAPTCHA also makes positive use of the human effort spent in solving CAPTCHAs by using the solutions to digitize text, annotate images, and build machine-learning datasets. This in turn helps preserve books, improve maps, and solve hard AI problems." (Bernal Decl. Ex. 3 at 2.) This sentence lists benefits of reCAPTCHA without identifying who benefits.

Second, the CFAC does not allege facts showing Gap's participation in the reCAPTCHA v2 service helps digitize text, annotate images, or build machine-learning datasets. There is no explanation or allegation about how this occurs.

Third, the CFAC does not allege that Gap conditions Google's alleged receipt of these alleged benefits upon Google's performance of claim steps. For example, with respect to claim 1 of the '141 patent, the CFAC does not allege that Gap conditions Google's receipt of the alleged benefit on Google electing an electronic image that comprises "imagery data other than words," or "associating said electronic image with one or more concepts," or "progressively revealing information," or "processing responses . . . to correlate an accuracy of guesses," or "calculating a percentage of participants able to decode and accurately guess said one or more concepts within a predetermined time." (ECF No. 14-1 at 33.) With respect to claim 1 of the '861 patent, the CFAC does not allege that Gap conditions Google's receipt of the alleged benefit on Google electing a manipulation challenge that "includes a set of physical manipulation instructions," or "automatically processing sensory data associated with user movements and/or manipulations,"

13

or "automatically determining if said user movements and/or manipulations from the user meet a required threshold." (ECF No. 14-2 at 33.)

Fourth, the CFAC does not allege facts that create a reasonable inference that Gap establishes the timing or manner of Google's alleged performance of the claim steps. The allegations that Gap controls whether reCAPTCHA is used in the first place and that Gap and Google use a site and secret key pair to initiate and authorize communications, (ECF No. 14 at ¶¶ 18, 19), are not sufficient because HDI must allege that Gap controls Google's performance of the particular allegedly infringing steps. *See Lyda*, 838 F.3d at 1340 (explaining that a complaint "must plausibly allege that Defendants exercise the requisite 'direction or control' over the performance of the claim steps, such that performance of *every step* is attributable to Defendants") (emphasis added). Similarly, the CFAC's repeated "but for" theory, (*see, e.g.*, ECF No. 14 at ¶¶ 23, 25, 27, 29, 31, 33, 35), is not sufficient because *Akamai* sets out a different causation standard than "but for" causation.

### e)     The CFAC Fails To Plead Joint Infringement By Joint Enterprise

The CFAC alleges that Gap and Google are involved in a joint enterprise, but does not plead facts sufficient to support this legal conclusion. (ECF No. 14 at ¶¶ 48–52.)

The CFAC does not allege facts showing Gap and Google have "a community of pecuniary interest" in a common purpose, which is required for a joint enterprise. *Akamai*, 797 F.3d at 1023. A "community of pecuniary interest" requires a monetary interest "common among the members of the group—it must be one shared without special or distinguishing characteristics . . . Indirect potential financial interests do not satisfy the test.." *Air Liquide Mexico S. de R.L. de C.V. v. Talleres Willie, Inc.*, No. CV H-14-211, 2015 WL 8763961, at *4 (S.D. Tex. Dec. 15, 2015) (citation and internal quotations omitted).

Instead of alleging that Gap and Google have *common* financial interests, the CFAC alleges they have *distinct* financial interests. The CFAC alleges Gap "is financially incentivized to implement and use reCAPTCHA v2 to provide a secure platform to advertise, explain, and/or offer its products, services, product literature, customer service articles, and/or coupons." (ECF No. 14 at ¶ 51.) On the other hand, the CFAC alleges "Google is financially incentivized to have Defendant implement and use the reCAPTCHA v2 technology in Defendant's website(s) because it assists Google in training and strengthening its various algorithms and other data gathering, which Google uses to improve the products and services it offers and/or sales." (*Id.*) These are separate financial interests, not a common one.

The CFAC also does not allege facts that make plausible the fourth requirement for a joint enterprise, which is "an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Akamai*, 797 F.3d at 1023. The CFAC does not allege that Gap has the right to control Google's reCAPTCHA v2 service. Instead it alleges just that Gap has the right to control its own website and also the right not to use the reCAPTCHA v2 service. (ECF No. 14 at ¶ 52.) The ability to decline to use a service is different than the ability to affect how a service is performed (e.g., a person can decide not to patronize a restaurant, but that does not give the person the ability to dictate how the restaurant prepares its signature dish).

## B.  The CFAC Fails To Plead Indirect Infringement

### 1.   The CFAC Fails To Plead A Predicate Direct Infringement

HDI's inducing infringement claim for the '141 patent (Count 2), inducing infringement claim for the '861 patent to the extent based on end-user direct infringement (Count 5), and contributory infringement claims for both patents (Counts 3 and 6) must be dismissed because they do not adequately plead an underlying direct infringement. *Limelight Networks, Inc. v.*

*Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("[L]iability for inducement must be predicated on direct infringement."); *In re Bill of Lading Transmission*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("[T]here can be no inducement or contributory infringement without an underlying act of direct infringement.").

To survive a motion to dismiss, a claim for indirect infringement must contain facts supporting an underlying direct infringement. *See, e.g.*, *Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538, 544 (E.D. Tex. 2010), *report and recommendation adopted*; *id.* at 544 ("[I]ndirect infringement allegations will not survive a Motion to Dismiss . . . where a plaintiff's complaint . . . fails to identify a direct infringer in reference to its indirect infringement claims."); *Clear With Computers, LLC v. Bergdorf Goodman, Inc.*, No. 6:09CV481, 2010 WL 3155888, *1–4 (E.D. Tex. Mar. 29, 2010) (dismissing claim in part on that basis).

### a)      The CFAC Fails To Plead Direct Infringement Of The '141 Patent

The CFAC asserts Gap induces infringement of the '141 patent based on direct infringement by Google (it does not allege contributory infringement of either asserted patent based on direct infringement by Google). (ECF No. 14 at ¶ 65.)

As set out in Section III.A.1, *supra*, the CFAC does not plausibly plead that Google, or anyone, performs the "calculating" step of claim 1 of the '141 patent because the CFAC misquotes a document as the basis of its allegation that Google performs this step. Without a plausible allegation that Google practices every step of claim 1 of the '141 patent, the CFAC's Count 2, to the extent based on Google's direct infringement of that patent, cannot stand.

### b)      The CFAC Fails To Plead Direct Infringement By Gap Website End-Users

The CFAC's Counts 2 and 5 assert that Gap induces infringement of both patents based on direct infringement by end-users of Gap's website (in addition to Google), and its Counts 3

16

and 6 assert that Gap contributes to infringement of both patents based on direct infringement by Gap's "end-users, customers, and/or other third parties" (but not Google). (ECF No. 14 at ¶¶ 65, 66, 73, 80, 81, 91.)

The CFAC does not contain plausible allegations that Gap's end-users or customers infringe. Their conduct is barely described, and nowhere correlated with the asserted claim requirements. Indeed, the claims on their face are not directed at end-users or customers, as they require *back-end* procedures for providing a CAPTCHA. For example, claim 1 of the '141 patent recites "automatically electing an electronic image for a participant" and "calculating a percentage of participants," (ECF No. 14-1 at 33), and claim 1 of the '861 patent recites "automatically electing a manipulation challenge for a user" and "automatically processing sensory data associated with user movements," (ECF No. 14-2 at 33).

HDI does not allege that Gap's end-users or customers perform any of the method steps. HDI alleges that Gap requires its customers "to solve a reCAPTCHA v2" to access resources on Gap's website, (ECF No. 14 at ¶¶ 66, 68, 81, 83, 86), but none of the method steps require a customer to solve a reCAPTCHA. Because the CFAC does not adequately plead an underlying direct infringement with regard to end-users or customers, its Counts 2 and 5, to the extent based on direct infringement by end-users, and its Counts 3 and 6, in their entirety, must be dismissed. *See, e.g.*, *Boynton v. Headwaters, Inc.*, 243 F. App'x 610, 614–15 (Fed. Cir. 2007) (affirming the grant of judgment on the pleadings of an induced infringement claim because the alleged direct infringer underlying that claim could not be a direct infringer).

### 2.    The CFAC Fails To Plead Induced Infringement <u>Because It Does Not Plead Intent Or Knowledge Of Infringement</u>

The CFAC fails to sufficiently plead Gap had the intent and knowledge of infringement needed for induced infringement of either patent (Counts 2 and 5). "For an allegation of induced

infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (alterations original) (citation omitted).

The CFAC pleads no facts supporting Gap's intent or knowledge of infringement, and instead makes only the following unsupported conclusions: "Such inducements include without limitation, with specific intent to encourage the infringement, knowingly inducing Google to use infringing articles and methods that Defendant knows or should know infringe one or more claims of the [asserted] Patent[s]." (ECF No. 14 at ¶¶ 65, 80; *see also id.* at ¶¶ 66, 81 (same allegation with regard to "end-users of Defendant's accused website(s)").

The Federal Circuit has repeatedly affirmed the dismissal of such inducement claims. For example, in *Superior Industries, LLC v. Thor Global Enterprises Ltd.*, the Federal Circuit affirmed the dismissal of a complaint asserting induced infringement because it did not "allege any facts to support a reasonable inference that [the accused infringer] specifically intended to induce infringement of the [asserted] Patent or that it knew it had induced acts that constitute infringement." 700 F.3d 1287, 1296 (Fed. Cir. 2012).

Similarly, the Federal Circuit found that a complaint "did not include facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement" and instead "simply recite[d] the legal conclusion that Defendants acted with specific intent" when it alleged that, for example, Defendants acted "with specific intent to urge, instruct, encourage" infringement by "causing[,] urging, aiding, or instructing others to perform one or more claimed methods of the [asserted] patent," and that Defendants acted "with specific intent

18

to induce third parties to infringe the [asserted] patent." *Addiction & Detoxification Inst. LLC v. Carpenter*, 620 F. App'x 934, 935–36, 938 (Fed. Cir. 2015).

As in those cases, here the CFAC alleges in a conclusory fashion that Gap had intent and knowledge of infringement, but provides no facts in support. *See also, e.g.*, *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *3–8 (W.D. Tex. May 12, 2014) (dismissing inducement claims that failed to sufficiently allege intent); *Google LLC v. Princeps Interface Techs. LLC*, No. 19-CV-06566-EMC, 2020 WL 1478352, at *4–5 (N.D. Cal. Mar. 26, 2020) (same).

HDI may argue that the CFAC provided Gap with "knowledge of infringement," such that a claim limited to post-suit damages would be appropriate. But "vague and conclusory allegations" that do not adequately explain how the accused infringer allegedly induced infringement—such as HDI's—do not provide factual support for any reasonable inference that a defendant possessed "knowledge that the induced acts constitute patent infringement." *Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00359 WHA, 2018 WL 2047553, at *4 (N.D. Cal. May 2, 2018); *see also, e.g.*, *Gharb v. Mitsubishi Elec. Automation, Inc.*, No. 10 C 07204, 2012 WL 1986435, at *6 (N.D. Ill. June 4, 2012) (dismissing induced infringement claim that failed to plead facts showing that an accused infringer had knowledge of infringement, as it was unclear from the allegations what direct infringement underlay the alleged inducement).

As a result, the Court should dismiss Counts 2 and 5 in their entirety.

**IV.**     <u>**CONCLUSION**</u>

For the reasons explained above, Gap respectfully requests the Court to dismiss the

CFAC.

August 4, 2020.                              Respectfully submitted,

                                             /s/ Klaus H. Hamm
                                             Robert T. Cruzen (Admitted *Pro Hac Vice*)
                                             Oregon State Bar No. 080167
                                             rob.cruzen@klarquist.com
                                             Klaus H. Hamm (Admitted *Pro Hac Vice*)
                                             Oregon State Bar No. 091730
                                             klaus.hamm@klarquist.com
                                             KLARQUIST SPARKMAN, LLP
                                             121 S.W. Salmon Street, Suite 1600
                                             Portland, OR 97204
                                             Telephone: (503) 595-5300
                                             Fax: (503) 595-5301

                                             Counsel for
                                             THE GAP, INC.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 4th day of August, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Nicole E. Glauser (nglauser@dinovoprice.com)
Andrew G. DiNovo (nglauser@dinovoprice.com)
DINOVO PRICE LLP
7000 N MoPac Expressway, Suite 350
Austin, TX 78731

/s/ Klaus H. Hamm
Klaus H. Hamm