# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| HUMAN DIFFERENTIAL INTELLIGENCE LLC, | § § § | |
| *Plaintiff*, | § § | Case No. 6:20-cv-00305-ADA |
| v. | § § | |
| CIGNA HEALTH & LIFE INSURANCE COMPANY, | § § § | **JURY TRIAL DEMANDED** |
| *Defendant*. | § § | |
| HUMAN DIFFERENTIAL INTELLIGENCE LLC, | § § § | Case No. 6:20-cv-00307-ADA |
| *Plaintiff*, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| THE GAP, INC., | § § | |
| *Defendant*. | § | |
| HUMAN DIFFERENTIAL INTELLIGENCE LLC, | § § § | Case No. 6:20-cv-00310-ADA |
| *Plaintiff*, | § § | **JURY TRIAL DEMANDED** |
| v. | § | |
| BED BATH & BEYOND, INC., | § § § | |
| *Defendant*. | § | |

## PLAINTIFF'S OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS[*]

---

[*] Dkt. 23 in *HDI v. Cigna Health & Life Insurance Company (Cigna)*, No. 6:20-cv-00305-ADA (the "*Cigna Action*"); Dkt. 17 in *HDI v. The Gap, Inc. (Gap)*, No. 6:20-cv-00307-ADA (the "*Gap*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION .......................................................................................................... 1

APPLICABLE LEGAL STANDARD .......................................................................... 1

ARGUMENT ................................................................................................................ 2

I.     THE FAC SUFFICIENTLY PLEADS DIRECT INFRINGEMENT UNDER A JOINT
OR DIVIDED INFRINGEMENT THEORY ..................................................... 2

     A.     The FAC Sufficiently Alleges that All Steps of the Methods Are Performed ........ 2

     B.     The FAC Sufficiently Alleges that Each Defendant Is Liable for Google's
Performance of Any Step (or Portion Thereof) of the Claimed Methods ............... 4

          1.     HDI's Allegations Plausibly Support Its Joint Enterprise Theory .............. 4

          2.     HDI's Allegations Plausibly Support Its Direction or Control Theory ...... 8

               a.     HDI Adequately Pleads Agency or Contractual Relationship ........ 9

               b.     HDI Adequately Pleads Receipt of a Benefit/Participation in
Activity Conditioned on Performance of Method Step(s) ............ 11

---

Action"); Dkt. 18 in *HDI v. Bed Bath & Beyond, Inc.* ("BBB," and together with the defendants in each of the other actions "Defendants"), No. 6:20-cv-00310-ADA (the "*BBB Action*"). Plaintiff Human Differential Intelligence LLC ("HDI") submits an omnibus response because all of the Defendants generally make the same arguments in their respective Motions to Dismiss ("Motion(s) or "Mot."), with BBB and Cigna (who are represented by the same counsel) making identical arguments, except for references to the particular named defendant and citations to the particular associated docket numbers. *Compare BBB Action*: Dkt. 18 *with Cigna Action*: Dkt. 23. For ease of reference, HDI cites herein to BBB's Motion in addressing both BBB's and Cigna's arguments.

Unless otherwise noted, citations to "¶#" refer to paragraphs in HDI's (corrected) Amended Complaints, which are substantively identical in each action and differ only in identifying the named Defendant, its address and service information, and its accused website(s). *See Cigna Action*: Dkt. 19; *Gap Action*: Dkt. 14; *BBB Action*: Dkt. 13.

Citations to lettered exhibits herein refer to exhibits attached to the Declaration of Nicole E. Glauser, dated August 17, 2020, filed in support of and concurrently with this Omnibus Response.

Unless otherwise noted, all emphasis is added.

c.    Resolution of HDI's Divided Infringement Claims Is Inappropriate at the Pleading Stage ............................................... 15

C.    Gap's Argument that HDI's '861 Patent Direct Infringement Claim Fails Because Google Performs Every Step of the Method Lacks Any Merit .............. 16

D.    The Remaining Cases on Which Defendants Rely Are Distinguishable ............. 17

II.    THE FAC SUFFICIENTLY PLEADS INDIRECT INFRINGEMENT ......................... 18

CONCLUSION .................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
    620 F. App'x 934 (Fed. Cir. 2015) ...................................................................... 20

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
    No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ............................... 20

*Air Liquide Mexcico S. de R.L. de C.V. v. Talleres Willie, Inc.*,
    No. CV H-14-211, 2015 WL 8763961 (S.D. Tex. Dec. 15, 2015) ................................ 6, 7

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) ............................................................... passim

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 1

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................. 1, 2, 10

*BMC Res., Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007) ....................................................................... 18

*CBA Envt'l. Servs., Inc. v. Toll Bros. Inc.*,
    403 F. Supp. 3d 403 (D.N.J. 2019) .................................................................... 10

*Confident Techs., Inc. v. Fandango Media*, LLC,
    No. LA CV:18-03035-JAK(AGRx), 2018 WL 3430539 (C.D. Cal. Aug. 20, 2018). 17, 18

*De La Vega v. Microsoft Corp.*,
    No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)................. 2, 4

*Deep9 Corp. v. Barnes & Noble, Inc.*,
    No. C11-0035JLR, 2012 WL 4336726 (W.D. Wash. Sept. 21, 2012) ............................ 10

*Desenberg v. Google, Inc.*,
    392 Fed. App'x 868, 2010 WL 345493 (Fed. Cir. 2010) ......................................... 17, 18

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018) ......................................................................... 2

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
    845 F.3d 1357 (Fed. Cir. 2017) ......................................................................... 19

*Finjan, Inc. v. Sophos, Inc.*,
    244 F. Supp. 3d 1016 (N.D. Cal. 2017) .......................................................................... 17

*Frac Shack, Inc. v. AFD Petroleum (Texas) Inc.*,
    No. 7:19-cv-00026-DC, 2019 WL 3818049 (W.D. Tex. June 13, 2019) ................ 2, 4, 19

*Free Stream Media Corp. v. Alphonso Inc.*,
    No. 17-CV-02107-RS, 2019 WL 4645725 (N.D. Cal. June 3, 2019)............................. 11

*Google LLC v. Princeps Interface Technologies LLC*,
    2020 WL 1478352 (N.D. Cal. Mar. 26, 2020)................................................................ 20

*Grecia v. VUDU*, Inc.,
    No. C-14-0775-EMC, 2015 WL 538486 (N.D. Cal. Feb. 9, 2015) .............................. 6, 10

*In re Bill of Lading*,
    681 F.3d 1323 (Fed. Cir. 2012) .................................................................................... 17

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    No. 1:18-cv-452, 2019 WL 330515 (D. Del. Jan. 25, 2019) ........................................ 13

*Lab. Corp. of Am. Holdings v. Chiron Corp.*,
    384 F.3d 1326 (Fed. Cir. 2004).........................................................................................7

*Lyda v. CBS Corp.*,
    838 F.3d 1331 (Fed. Cir. 2017)........................................................................... 2, 8, 17

*Mankes v. Vivid Seats Ltd.*,
    822 F.3d 1302 (Fed. Cir. 2016)...................................................................... 4, 15, 16

*MAZ Encryption Techs. LLC v. BlackBerry Ltd.*,
    No. 6:15-CV-1167-RWS-JDL, 2016 WL 9275008 (E.D. Tex. June 7, 2016) .................. 4

*MAZ Encryption Techs. LLC v. BlackBerry Ltd.*, No.
    No. 6:15-CV-1167-RWS-JDL, 2016 WL 9275397 (E.D. Tex. June 27, 2016) ................ 4

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)..................................................................................................... 15

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed.Cir.2008)...........................................................................................9

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018)..................................................................................... 17

*Nalco Co. v. Turner Designs, Inc.*,
    73 F. Supp. 3d 1096 (N.D. Cal. 2014) ...............................................................................9

*OLA, LLC v. Builder Homesite, Inc.*,
    661 F. Supp. 2d 668 (E.D. Tex. 2009) ............................................................. 7

*Pers. Audio, LLC v. Google, Inc*.,
    No. 1:15-CV-350, 2017 WL 4837853 (E.D. Tex. May 15, 2017)..................................... 13

*Plano Encryption Techs., LLC v. Alkami Tech., Inc.*,
    No. 2:16-cv-1032-JRG, 2017 WL 8727249 (E.D. Tex. Sep. 22, 2017) ................... passim

*Promega Corp. v. Life techs. Corp.*,
    773 F.3d 1338 (Fed. Cir. 2014)....................................................................... 20

*Rearden LLC v. Walt Disney Co.*,
    293 F. Supp. 3d 963 (N.D. Cal. 2018) ............................................................ 17

*Scott Environ. Serv., Inc. v. Waste Facilities, Inc.*,
    No 2:16-cv-01279-JRG-RSP, Dkt. 78 (E.D. Tex. Nov. 16, 2017) ...................... 7

*Shure, Inc. v. ClearOne, Inc.*,
    No. 17 C 3078, 2018 WL 1371170 (N.D. Ill. Mar. 16, 2018) ........................... 8

*Sound View Innovations, LLC v. Hulu, LLC*,
    No. LACV1704146JAKPLAX, 2019 WL 2619639 (C.D. Cal. Apr. 30, 2019).............. 17

*State Nat'l Ins. Co. v. Access Gen. Agency, Inc*.,
    No. 1:04-CV-2594-JTC, 2006 WL 8432786 (N.D. Ga. Apr. 13, 2006).......................... 10

*Superior Indus. LLC v. Thor Global Enter. Ltd.*,
    700 F.3d1287 (Fed. Cir. 2012).......................................................................... 20

*Techno View IP, Inc. v. Sony Interactive Entertainment LLC*,
    No. SACV 17-01268-CJC(JCGx), 2018 WL 3031518 (C.D. Cal. Apr. 18, 2018) ......... 13

*Travel Sentry, Inc. v. Tropp*,
    877 F.3d 1370 (Fed. Cir. 2017)................................................................. 12, 18

*Two-Way Media Ltd v. Verizon Commc'ns Inc.*,
    No. CV 14-1212-RGA-MPT, 2015 WL 2375805 (D. Del. May 18, 2015)..................... 11

## INTRODUCTION

HDI accuses Defendants of infringing U.S. Patent Nos. 8,752,141 (the "'141 Patent") and 9,192,861 (the "'861 Patent," and together with the '141 Patent "the Patents-in-Suit"). HDI's Original Complaints set forth sufficient factual allegations to state a plausible claim for relief against Defendant for direct infringement and indirect infringement, based on the incorporation and operation of reCAPTCHA v2 technology by Defendants in their respective websites. *See, e.g.*, *Cigna Action*: Dkt. 1 (the "Original Complaint"). Nevertheless, in response to Defendants' first motions to dismiss, HDI responded by amending its complaint to include further factual detail in support of HDI's infringement claims. *See, e.g.*, *Cigna Action*: Dkt. 19 (the "First Amended Complaint" or "FAC"). The additional allegations, among other things, demonstrate a reasonable belief that each Defendant is liable for divided infringement for any method steps performed by Google under alternate theories of joint enterprise, agency, contract, direction, or control. Yet Defendants' still seek dismissal of HDI's lawsuits. However, Defendants' various disputes over specific allegations—which are unsupported, self-serving, and contrary to viewing facts in a light most favorable to HDI—do ***not*** demonstrate that HDI's divided infringement claims or that its indirect infringement claims are implausible. HDI has exceeded the applicable notice pleading standards. Defendants' Motions should be denied.

## APPLICABLE LEGAL STANDARD

Satisfying the Fed. R. Civ. P. 8(a)'s pleading standard requires that the complaint allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility requirement is not akin to a "probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" that the defendant is liable. *Twombly*, 550 U.S. at 556. In assessing plausibility, the complaint's factual

allegations must be accepted as true and all reasonable inferences drawn in plaintiff's favor. *Id.* at 558. The party moving for dismissal has the burden of showing that no claim has been stated. *Plano Encryption Techs., LLC v. Alkami Tech., Inc.*, No. 2:16-cv-1032-JRG, 2017 WL 8727249, at *4 (E.D. Tex. Sep. 22, 2017).

## ARGUMENT

## I.    THE FAC SUFFICIENTLY PLEADS DIRECT INFRINGEMENT UNDER A JOINT OR DIVIDED INFRINGEMENT THEORY

To allege joint or divided infringement, "the complaint must plead 'facts sufficient to allow a reasonable inference that [A] all steps of the claimed method are performed and [B] either (1) one party exercises the requisite 'direction and control' over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party.'" *De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 11, 2020) (quoting *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2017)); *see also Frac Shack, Inc. v. AFD Petroleum (Texas) Inc.*, 2019 WL 3818049, at *3 (W.D. Tex. June 13, 2019). HDI's FAC satisfies this standard.

### A.    The FAC Sufficiently Alleges that All Steps of the Methods Are Performed

The FAC sufficiently alleges the direct infringement element of divided infringement. In addition to attaching and describing the subject matter of the Patents-in-Suit (¶¶10-13), the FAC alleges that all steps of at least claim 1 of both Patents are performed when an end-user attempts to access resources or content on Defendant's website incorporating and operating the reCAPTCHA v2 framework. ¶19-22, 36-37, 61, 76. Those allegations are enough. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (reaffirming that attaching the patent as an exhibit to the complaint, identifying the accused product by name, and alleging the accused product meets each and every limitation of at least one claim of the asserted

patent satisfies the pleading standard). Nevertheless, the FAC goes further by providing citations to specific evidence demonstrating how Defendant's website incorporating and operating the reCAPTCHA v2 technology satisfies each element of those exemplary asserted claims. ¶¶24, 26, 28, 30, 32, 34, 53.

Gap argues that HDI's allegation regarding performance of the "calculating" step of the '141 Patent is insufficient because it "misquotes Google's website." Gap Mot. at 4-5.[1] That argument should be rejected. The FAC alleges that "Google and/or a Google server(s)/computer(s) tabulates the total number of participants that used reCAPTCHA v2 on Defendant's website(s) 'and the percentage of end-users able to solve the captcha within the allowable time period.'" ¶28 (citing                https://developers.google.com/recaptcha/docs/faq                and https://developers.google.com/recaptcha/docs/settings, attached as Ex. C). HDI's use of quotation marks in the last sentence of paragraph 28 was an inadvertent editing error.[2]  However, while Gap is correct that the quoted phrase does not appear word-for-word in the cited webpage, Gap is wholly incorrect to suggest that either of the cited webpages contradicts or otherwise does not support HDI's allegations. Both webpages are part of Google's developer guides, which contain links to, and additional information regarding, the "admin console" referenced by HDI. *See* Ex. C at 1, 11 (cited in ¶28). The "Analytics" subheading of the "Admin Console" section of those cited guides shows four reCAPTCHA v2 calculation charts and their associated descriptions. *See* Ex. D

---

[1] '141 Patent, claim 1(e) recites: "calculating a percentage of participants able to decode and accurately guess said one or more concepts within a predetermined time."

[2] That HDI's use of quotation marks was merely an inadvertent editing error is demonstrated by the fact that HDI's preliminary infringement contentions contain the identical allegation, using the same language and citation, but *without* the quotation marks (Ex. A at 39), and HDI served its contentions more than three hours *before* Gap filed its Motion pointing out the mistake. *Compare* Ex. A at 1 *with* Ex. B.

at 2-3.[3] This evidence is part of HDI's citations and corroborates its allegation, or at least makes plausible, that a percentage of end-users able to solve the presented captcha is calculated, as recited in claim 1 of the '141 Patent. ¶28. Contrary to Gap's assertion, nothing in the cited webpages contradicts HDI's allegations, thus rending Gap's cited cases inapposite. *See* Gap. Mot. at 5.

### B.    The FAC Sufficiently Alleges that Each Defendant Is Liable for Google's Performance of Any Step (or Portion Thereof) of the Claimed Methods.

The FAC also sufficiently alleges "attribution." *See De La Vega*, 2020 WL 3528411, at *4; *see also* ¶¶36-38, 45-46, 48, 53. HDI pleads specific facts to plausibly support its theories of joint enterprise, agency, contract, direction, or control as bases for divided infringement, as set forth below.  *See Plano*, 2017 WL 8727249, at *4 (finding allegations similar to HDI's allegations sufficient to support "joint enterprise, agency, direction, or control" at the pleading stage).[4] Resolution of HDI's divided infringement allegations prior to discovery is inappropriate. *Mankes v. Vivid Seats Ltd*., 822 F.3d 1302, 1311 (Fed. Cir. 2016) (emphasizing it is not "appropriate to rule out at [the pleading] stage any particular theory of direct infringement"); *see also Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).

### 1.    HDI's Allegations Plausibly Support Its Joint Enterprise Theory

A third party's performance of the steps of a method claim may be attributed to the defendant where the actors form a joint enterprise. *Akamai*, 797 F.3d at 1022. "[J]oint enterprise requires proof of four elements: (1) an agreement, express or implied, among the members of the

---

[3] In its now-served preliminary infringement contentions, HDI included screenshots of the calculations and associated descriptions from the reCAPTCHA v2 analytics webpage (*see* Ex. A at chart pages 39-42), but it had no obligation to plead contention-level detail in its complaint. *See, e.g.*, *MAZ Encryption Techs. LLC v. BlackBerry Ltd*., 2016 WL 9275008, at *3 (E.D. Tex. June 7, 2016), *report and recommendation adopted*, 2016 WL 9275397 (E.D. Tex. June 27, 2016).
[4] HDI need not further allege "what claim steps are performed by [BBB or Cigna] and what steps are performed by Google" (*see* BBB Mot. at 1) at this stage. *See Plano* 2017 WL 8727249, at *4; *Frac*, 2019 WL 3818049, at *3.

group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to voice in the direction of the enterprise, which gives an equal right to control." *Id.* HDI alleges a joint enterprise between each Defendant and Google (¶¶48-53), and the Court must accept the well plead allegations as true.

First, the FAC plausibly alleges that Defendants entered into agreements with Google to carry out the common purpose of implementing and operating reCAPTCHA v2 on Defendants' websites. ¶¶49-50. Specifically, HDI alleges that Defendants "must create and register a reCAPTCHA v2 account" to incorporate and operate reCAPTCHA v2 in their websites. ¶49 (citing https://www.google.com/recaptcha/admin/create, attached as Ex. E); *see also* ¶18. HDI also specifically alleges that, but for each Defendant registering an account and incorporating and operating reCAPTCHA v2 on its website, reCAPTCHA would not operate on Defendant's website. ¶¶18-19. HDI further specifically alleges that Defendants enter into at least the following agreements with Google: (1) "reCAPTCHA Terms of Service," https://www.google.com/recaptcha/admin/create; (2) "Google API's Terms of Use," *see id.* (link to https://developers.google.com/terms/); and (3) "Google Terms of Use," https://policies.google.com/terms; https://policies.gogoogle.com/terms/archive. *See* ¶49; *see also id.* ¶¶42-45. In support of the joint enterprise, Google provides developer guides, information, and support. *See* https://developers.google.com/recaptcha/docs (cited at, *e.g.*, ¶¶22-23, 28). These facts plausibly support formation of a joint enterprise, agency, contract, direction, or control in pursuit of a common purpose. *See Akamai*, 797 F.3d at 1022.

Gap's argument that the Terms of Service cannot serve as the predicate agreement because it does not mention the reCAPTCHA v2 service should be flatly rejected. The evidence cited in the FAC makes explicit that agreement to the Terms of Service and the other cited agreements is

required for the provision and implementation of reCAPTCHA v2 in Defendant's website. ¶49 (citing Ex. E: https://www.google.com/recaptcha/admin/create, which provides: "By accessing or using the reCAPTCHA APIs, you [Defendants] agree to Google APIs Terms of Use, Google Terms of Use, and to the Additional Terms below [referring to the reCAPTCHA Terms of Service]). Likewise, BBB/Cigna's attempt to downplay the import of these agreements simply because they constitute form terms of service should be rejected. *See Grecia v. VUDU*, Inc., 2015 WL 538486, at *5 (N.D. Cal. Feb. 9, 2015) (relying on a "form license agreement" to find direction or control); *see also Plano*, 2017 WL 8727249, at *4 (ruling that a complaint relying on form developer and license agreements supported the allegations of "joint enterprise, agency, direction, or control); Ex. F (*Plano* complaint, ¶¶14-18).

Additionally, the FAC plausibly alleges a "community of pecuniary interest" in the common purpose. ¶51. HDI alleges that "Defendant and Google derive financial benefit from the implementation and use of reCAPTCHA v2 technology." *Id.* HDI further describes that Defendants and Google are "financially incentivized to implement and use reCAPTCHA v2." ¶51. As a result of Defendants' and Google's shared resources—Defendants providing its website and Google providing its servers, as well as reCAPTCHA v2 guides and support—Defendants realized the joint benefits. These allegations demonstrate an adequate common pecuniary interest in Defendant's websites configured with reCAPTCHA v2.

Attempting to controvert this plausibility, Gap relies on *Air Liquide Mexico S. de R.L. de C.V. v. Talleres Willie, Inc.*, 2015 WL 8763961, at *4 (S.D. Tex. Dec. 15, 2015), to argue that HDI's alleged pecuniary interest is not "common." *See* Gap Mot. at 14. But that case does not support dismissal here. First, *Air Liquide* is not a patent infringement case, but rather a case applying Texas common law, which narrowly defines the community of pecuniary interest factor.

*Air Liquide*, 2015 WL 8763961, at *1, 4. Gap cites no precedent as to why Texas common law controls an issue of divided infringement. *See Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004) (Federal Circuit law applies in cases where "the issue pertains to or is unique to patent law"). Nor does Gap cite any Federal Circuit decision (or even patent infringement case) to support its argument that HDI's common pecuniary interest allegations are not sufficient. And the FAC does not allege that Gap and Google have "distinct financial interests" (Gap Mot. at 15), but instead alleges that Gap and Google share the same financial incentive—*i.e.*, to implement and operate reCAPTCHA v2 on Gap's website. ¶51; *see also OLA, LLC v. Builder Homesite, Inc.*, 661 F. Supp. 2d 668, 672 (E.D. Tex. 2009) (finding common pecuniary interest where the defendants' joint development of an infringing product enabled them to "realize increased sales"); Ex. G (Order and Recommendation, *Scott Environ. Serv., Inc. v. Waste Facilities, Inc.*, No 2:16-cv-01279-JRG-RSP ("*Scott* Action"), Dkt. 78 at 1-2 (E.D. Tex. Nov. 16, 2017) (denying defendant's motion to dismiss joint infringement allegations, *see* paragraph 14 of complaint) (adopted Dec. 04, 2017, Dkt. 82)).

Finally, the FAC plausibly alleges an "equal right of control." ¶52. Specifically, each Defendant and Google has an equal right to control because consent of the other is required to implement and use reCAPTCHA v2 on Defendants' respective websites, and each have the right to remove reCAPTCHA v2 after it is implemented. ¶¶38, 52. Defendants do not cite any authority to support their arguments that such allegations are insufficient or "a misapplication of the law." BBB Mot. at 14; *see also* Gap Mot. at 15. Indeed, courts have found similar allegations adequate. *See Plano*, 2017 WL 8727249, at *4; *see also* Ex. F (*Plano* complaint, ¶18).

There is no requirement that the right to control be identical or coextensive. *See Akamai*, 797 F.3d at 1023 (the fourth element of a joint enterprise requires "an equal right to a voice in the

direction of the enterprise"). Nor is there a requirement that a member of the joint enterprise be able to unilaterally control another member. *See Shure, Inc. v. ClearOne, Inc.*, 2018 WL 1371170, at *9 (N.D. Ill. Mar. 16, 2018) (noting that it is an equal right to control "***in the direction of the enterprise***," rather than the right to control another member of the enterprise). Where, as here, parties work together to "undertake the joint project of promoting interoperability" of components produced by the parties independently (*e.g.*, Defendants' websites and Google's servers) (¶14-16), courts have found the "equal right of control" element satisfied. *See Shure,* 2018 WL 1371170, at *9.

Ultimately, "whether actors entered into a joint enterprise is a question of fact" not appropriate for resolution prior to discovery. *Akamai*, 797 F.3d at 1023. At this pleading stage, HDI plausibly alleges more than enough facts to support its alternative joint enterprise theory as a basis for divided infringement liability.

### 2.     HDI's Allegations Plausibly Support Its Direction or Control Theory

An actor is also liable for direct infringement if the actor "exercises the requisite 'direction or control' over the other's performance." *Lyda*, 838 F.3d at 1339. The following three circumstances are sufficient to establish the requisite "direction or control": "(1) an agency relationship; (2) a contract; or (3) when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai*, 797 F.3d at 1023. Contrary to Defendants' suggestion, however, the above tests are not rigid or exclusive. "[O]ther factual scenarios may arise which warrant attributing others' performance of method steps to a single actor." *Id*. "Whether a single actor directed or controlled the acts of one or more third parties is a question of fact." *Id.* The FAC plausibly pleads direction or control based on the specific facts alleged here.

a.        **HDI Adequately Pleads Agency or Contractual Relationship**

HDI adequately pleads that Google's infringing actions are attributable to Defendant based on allegations of agency or other contractual relationship. ¶¶17, 42-44, 49. Specifically, HDI alleges that, upon information and belief, Defendants have each entered into contractual agreements—including the subscription agreement, the reCAPTCHA Terms of Service, the Google API's Terms of Use, and the Google Terms of Use—with Google regarding the implementation and operation of the reCAPTCHA v2 technology (rather than some generic reCAPTCHA service, ¶¶18-19) in Defendants' websites and to perform the acts accused of infringement. ¶42; *see also id.* ¶49. Contrary to Cigna/BBB's assertion that these agreements are not contractual, at least the Google Terms of Use makes explicit that each Defendant and Google are in a contractual relationship. *See* ¶¶42 (citing https://www.google.com/recaptcha/admin/create; https://policies.google.com/terms ("Google services [such as reCAPTCHA v2] are provided by, and ***you're contracting with*** Google LLC," *see Gap Action*; Dkt. 17-3). HDI further alleges that, upon information and belief, pursuant to these agreements "Defendant agreed to indemnify Google for claims arising out of or related to Defendant's use of reCAPTCHA v2 technology on Defendant's website(s)" (¶43) and that "Defendant has acknowledged and agreed that Google acts on behalf of Defendant for purposes using reCAPTCHA v2 technology on Defendant's website" (¶¶43-44). These allegations plausibly support the existence of a principal-agent or like contractual relationship between Defendants and Google. *See Muniauction, Inc. v. Thomson Corp*., 532 F.3d 1318, 1330 (Fed.Cir.2008) ("[T]he control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method."); *see also Nalco Co. v. Turner Designs, Inc*., 73 F. Supp. 3d 1096, 1105 (N.D. Cal. 2014) (finding that a reasonable jury could find that the end-user agreed to be held vicariously liable for patent infringement

resulting from actions by the defendant based on the existence of a contractual indemnification clause); *Grecia*, 2015 WL 538486, at *5 (ruling that a license agreement indemnity term "implies [the defendant] acts as the principal in an agency relationship with [the third party]").[5]

Cigna/BBB's argument over the effect of specific provisions of the exemplary agreements does not support dismissal. Whether the agreements, relationship, and interoperability of systems between each Defendant and Google ultimately evidences a joint enterprise, agency, direction, or control should not be resolved on a motion to dismiss. Further, construed in HDI's favor, the provisions cited by Defendants do not negate the inference that Google's performance of its obligations pursuant to the subscriptions and other agreements with Google enables and directs performance of the claimed method steps. *See Twombly*, 550 U.S. at 556.

Defendants' other cited cases do not support dismissal of HDI's agency or contract theory, as none of those cases involve the type of direction or control alleged here. *See Deep9*, 2012 WL 4336726, at *12-13  (plaintiff attempted to assign responsibility to defendant because it supplied the nook device allegedly programmed to automatically perform the claimed step upon a user's connection to the internet); *CBA Envt'l. Servs., Inc. v. Toll Bros. Inc.,* 403 F. Supp. 3d 403, 418–19 (D.N.J. 2019) (plaintiff did not allege that defendant directed or controlled performance of the claimed method steps but instead generically alleged only "that [defendant] 'routinely directed and controlled soil remediation projects'" and explicitly alleged that defendant "did not exercise direction or control over every step of the [asserted] patent") (citations omitted); *Free Stream Media Corp. v. Alphonso Inc*., No. 17-CV-02107-RS, 2019 WL 4645725, at *2 (N.D. Cal. June 3,

---

[5] Gap's cited cases (*see* Mot. at 12) do not indicate otherwise. *See Deep9* does not address indemnification provisions (*see* 2012 WL 4336726, at *12-13), and *State Nat'l Ins. Co. v. Access Gen. Agency, Inc*., 2006 WL 8432786, at *2–3 (N.D. Ga. Apr. 13, 2006), is a non-patent infringement case that has not been followed or cited by any court analyzing dividing infringement.

2019) (system claims only) (the *Akamai* framework as limited to instances in which a sufficient contractual relationship exists and has not been cited or relied upon by any other court); *Two-Way Media Ltd v. Verizon Commc'ns Inc.*, No. CV 14-1212-RGA-MPT, 2015 WL 2375805, at *6-7 (D. Del. May 18, 2015) (pre-*Akamai*) (finding plaintiff could not plausibly allege the necessary contractual obligation "because the terms of the contracts between defendants and the third parties [were] unknown to plaintiff). Here, HDI alleges that pursuant to the subscription and other agreements, Defendants via their websites and the code incorporated therein by Defendant direct and control Google servers to perform each step of the Patents-in-Suit that Defendant does not itself perform. ¶¶22-37, 42-44, 49.

Gap also argues that the Terms of Use and Terms of Service contracts do not support an agency or contractual relationship because, in Google's view, particular provisions of those agreements indicate that "Google believes it has the right to operate its services as it sees fit." Gap Mot. at 11. However, this argument amounts to a mere dispute over the facts that cannot be resolved on a motion to dismiss. *See Plano*, 2017 WL 8727249, at *6 ("the scope of the alleged agency relationship . . . is not a question that is appropriate to evaluate or address in disposing of a motion brought under Rule 12(b)(6), and is not grounds upon which relief under the Motion may be granted"). HDI's factual allegations of the requisite agency or contractual relationship, taken as true with all reasonable inferences drawn in its favor, are plausible.

### b.    HDI Adequately Pleads Receipt of a Benefit/Participation in Activity Conditioned on Performance of Method Step(s)

The FAC also adequately pleads that any performance of the method steps (or portions thereof) by Google is attributable to each Defendant who "conditions" Google's "participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai*, 797 F.3d at 1023; *see also* ¶46.

First, the FAC plausibly pleads that Google participates in the activity of operating reCAPTCHA v2 on Defendants' websites. ¶18, 36-37, 50. The FAC also plausibly pleads that Google obtains a benefit from each Defendant's implementation and operation of reCAPTCHA v2 technology in its website. ¶¶39, 51. In support of its benefit allegation, HDI cites Google documentation—"reCAPTCHA Help"—in which Google states: "reCAPTCHA also makes positive use of human effort spent in solving CAPTCHAs by using the solutions to digitize text, annotate images, and build machine learning datasets." ¶39 (citing https://support.google.com/recaptcha/?hl+en, *see Gap Action*: Dkt. 17-4). That non-monetary allegation is enough. *See Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1382 (Fed. Cir. 2017).

Gap alone complains about the sufficiency of HDI's benefit allegations. *See* Gap Mot. at 12-13 (complaining that HDI's "lists benefits of reCAPTCHA without identifying who benefits"). That complaint is nonsense. It ignores that "reCAPTCHA" is Google's proprietary service and thus any "positive use" inures to the benefit of Google (even if others also share in the benefits). It further ignores that, as HDI alleges, use of reCAPTCHA v2 on Defendant's website(s) "assists Google in training and strengthening its various algorithms and other data gathering, which Google uses to improve the products and services it offers and/or [sic] sells." ¶51; *see also* Ex. E (cited in ¶49) ("the reCaptcha API works by collecting hardware and software information, such as device and application data," which "will be used for improving reCAPTCHA").[6] Upon information and belief Google charges certain publishers for use of reCAPTCHA (*see* Ex. I), and discovery will reveal whether these Defendants pay any such fees.

---

[6] Other publicly available documents corroborate that Google uses reCAPTCHA to "train Google's AI to be even smarter" (*see* Ex. H at 2) and to "collect[] data from [the end-user's] computer, which gives Google a view into user traffic" (*see* Ex. I at 2).

Additionally, HDI also alleges plausible facts supporting the allegation that each Defendant conditions Google's receipt of the above benefits, or participation in the operation of reCAPTCHA v2 technology on Defendants' websites, on performance of one or more method steps. ¶46. The FAC specifically alleges that Defendant directs, controls, or causes Google, via command instructions from Defendant's website (or the end-user's browser at the direction of Defendants' websites), to perform actions that constitute each of the recited method steps. ¶¶19-22, 26, 28, 30, 32, 34, 36-37. HDI also specifically alleges that reCAPTCHA v2 would not operate, and thus would not permit Google's participation in providing reCAPTCHA v2 or receipt of any reCAPTCHA v2 derived benefit, "but for" Defendants' instructions and Google's mandated response to those instructions. ¶¶36-37; *see also* ¶23, 25, 27, 29, 31, 33, 35.

Other courts have found similar allegations sufficient to plead a claim of joint infringement between the defendant and a third party. *See IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 330515, at *3 (D. Del. Jan. 25, 2019) ("[E]vidence may be sufficient to support an inference of direction or control when (1) the benefits of a particular service or product can be obtained only if third parties comply with instructions given by the defendant, and (2) the instructions direct the third parties to perform acts that constitute recited steps in the asserted method claims.") (citing *Akamai* and *Travel Sentry*); *Techno View IP, Inc. v. Sony Interactive Entertainment LLC*, 2018 WL 3031518, at *7 (C.D. Cal. Apr. 18, 2018) (allegations that defendants "instructed and encouraged third parties to infringe the Asserted Patents by providing instructions and advertising how to use the PlayStation consoles and a PSVR headset in an infringing manner . . . plausibly alleged that it conditioned the use of its PlayStation consoles for 3D videogame play upon its third parties' performance of some of the steps of the Asserted Patents"); *Pers. Audio, LLC v. Google, Inc.*, 2017 WL 4837853, at *5 (E.D. Tex. May 15, 2017) (finding allegations "Google issues

13

computerized instructions to direct or control users and infringing devices" sufficient to allege divided infringement). Thus the implementation and operation by Defendants of the code and other computerized instructions that instruct and cause Google's servers to carry out the method steps, as alleged by HDI, at least supports a reasonable inference that each Defendant directs or controls that performance.

BBB/Cigna incorrectly argues that HDI's allegations of direction or control are insufficient because "Defendant simply calls on a publicly available API with a single line of source code." BBB Mot. at 11. First, no case law supports holding that a single line of code *per se* cannot direct or control a third party's performance of a method step. Second, HDI does not factually allege "that only a single line of 'source code' is 'incorporated' into [Defendant]'s website to activate the Google reCAPTCHA framework." BBB Mot. at 9. Instead, paragraph 16 includes a screenshot of only "***one excerpt of***" the HTML and JavaScript source code and other instructions" incorporated by Defendant into Defendant's websites. ¶16. Combined with HDI's other allegations and viewed in HDI's favor, HDI alleges each Defendant implements more than a single line of source code.[7]

Further, the FAC plausibly pleads that Defendants establish "the manner or timing" of any performance by Google. *Akamai*, 797 F.3d at 1023; *see also* ¶47. Each Defendant "establishes the manner or timing of [Google's] performance" by controlling which of its website content or resources are protected by reCAPTCHA v2 and thus if and how Google's servers are instructed and called upon to interact with the website to carry out infringing functionality. ¶¶47; *see also*

---

[7] Publicly available information corroborates HDI's allegations. *See* Ex. J at 98, 103, 105, 106, 107, 109, 111-113 (copy of BBB's source code created by BBB software engineers reflecting multiple lines of source code referencing reCAPTCHA); Ex. K at 12-13 (same re. Cigna). Furthermore, Cigna/BBB's code invokes the inclusion in their websites of more than 600 additional lines of reCAPTCHA v2 source code and instructions. *See* Ex. J at 98 (BBB code calling file google.com/reCAPTCHA/api.js); Ex. K at 12 (same re. Cigna code); *see also* Ex. L (the content called by "reCAPTCHA/api.js" file, consisting of 685 lines of code).

¶¶15-19; *see also Akamai*, 797 F.3d at 1023. Although Google may have written the reCAPTCHA v2 API, that code is not implemented by or run by Google, but rather incorporated and operated by Defendants in Defendants' websites. ¶¶16, 20-21, 36-37. ReCAPTCHA v2 cannot function on each Defendant's website without the direction or control of Defendant. HDI's allegations support a reasonable inference of liability for divided infringement based on joint enterprise, agency, other contractual relationship, direction, or control.

**c.    Resolution of HDI's Divided Infringement Claims Is Inappropriate at the Pleading Stage**

Resolving the disputed fact issues in Defendants' favor, which is a prerequisite to Defendant's requested relief, would be inappropriate. The Federal Circuit has reaffirmed that "[a]n actor 'infringes vicariously by profiting from direct infringement' if that actor has the right and ability to stop or limit the infringement." *Akamai*, 797 F.3d 1023 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 931 (2005)). The case law also explicitly acknowledges that "other factual scenarios may arise which warrant attributing others' performance of method steps to a single actor" and that divided infringement must be assessed "in the context of the particular facts presented." *Akamai*, 797 F.3d at 1023; *see also Mankes,* 822 F.3d at 1311 (stating that a plaintiff may be able to allege facts that fall within divided infringement under *Akamai* "*or* might otherwise justify finding direct-infringement liability for divided infringement").

HDI alleges that Defendant has agreed to be responsible for any infringement by Google relating to the use of reCAPTCHA v2 technology, and that Defendant could at any time stop the infringement by not implementing and operating the reCAPTCHA v2 technology on its websites. ¶¶16, 38,43-44. HDI also alleges that Defendant profits and benefits from the implementations and use of reCAPTCHA v2 in its websites. ¶41. These allegations state a plausible claim for divided

infringement and HDI should be allowed a chance to prove its case. *See id.* (emphasizing that it is not "appropriate to rule out at [the pleading] stage any particular theory of direct infringement"). HDI's direct infringement claims based on a divided infringement theory should not be dismissed.

### C.    Gap's Argument that HDI's '861 Patent Direct Infringement Claim Fails Because Google Performs Every Step of the Method Lacks Any Merit

Gap alone contends that HDI fails to state a claim for direct infringement of the '861 Patent because Google performs every step of claim 1. But Gap is mistaken as to the facts and the law. First, regarding both Patents-in-Suit, the FAC pleads that Gap performs each step. ¶¶22, 24, 26, 28, 30, 32, 34.[8] Nevertheless Gap argues that "the more specific allegations for each step support only Google performing the step." Gap Mot. at 7. That argument improperly asks this Court to adopt Gap's, and not HDI's, understanding of the facts as true, when instead all well pleaded facts must be construed in HDI's favor at this pleading stage.[9] Further, HDI's specific allegations do not support only Google performing the steps. *See* ¶22, 24, 26, 28, 30, 32, 34. For example, regarding the "processing" element of claim 1, which recites "automatically processing sensory data associated with user movements and/or manipulations of the portable computing device," the FAC specifically alleges that ***Gap*** receives data associated with a user's scrolling or other movements and in response encapsulates that data in a network communication passed to a Google server. ¶32. That allegation plausibly pleads that ***Gap*** (not Google) "processes" the data, as recited in claim 1 of the '861 Patent. Gap's contrary argument should be denied as dependent on the construction of "processing" and on Gap's noninfringement contention. *See In re Bill of Lading*,

---

[8] HDI does not concede that Defendants do not perform the method steps or that Google performs all steps, but instead alleges in the alternative that, to the extent Google also performs all the steps, each Defendant is nonetheless liable for indirect infringement. ¶¶65, 80. This alternative theory of liability does not defeat HDI's plausible allegation that Defendants directly infringe.

[9] Cigna/BBB's assertion that they do not perform any methods step is another factual dispute that cannot be resolved in Defendant's favor on a motion to dismiss.

681 F.3d 1323, 1343 n.12 (Fed. Cir. 2012) ("claim construction at the pleading stage . . . [is] inappropriate").

Finally, contrary to Gap's contention, a divided infringement claim exists even if defendant itself does not perform any of the method steps, so long as performance of each step by a third party is attributable to defendant. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018) (reversing an order granting a motion to dismiss and finding dividing infringement plausible where plaintiff alleged party directed and controlled the acts of another party without itself performing any steps of the claim); *see also Sound View Innovations, LLC v. Hulu, LLC*, 2019 WL 2619639, at \*10 (C.D. Cal. Apr. 30, 2019). In fact, the district court cases cited by Gap were all decided before *Nalco* and conflict with that Federal Circuit precedent. *See* Gap. Mot. at 8 (citing *Finjan, Inc. v. Sophos, Inc.*, 244 F. Supp. 3d 1016, 1044 (N.D. Cal. 2017) and *Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963, 973 (N.D. Cal. 2018)). Likewise, Gap's citation to general statements from *Akamai* and *Lyda* do not support Gap's argument, as each of those cases involved fact issues different from the issue here and did not hold or otherwise state that direct infringement under a divided infringement theory requires that the defendant perform at least one step of the claimed method. *See Akamai*, 797 F.3d at 1025; *Lyda*, 838 F.3d at 1340.

### D.    The Remaining Cases on Which Defendants Rely Are Distinguishable

Defendants' reliance on *Confident Techs., Inc. v. Fandango Media*, LLC, 2018 WL 3430539 (C.D. Cal. Aug. 20, 2018) and Cigna/BBB's reliance on *Desenberg v. Google, Inc.*, 2010 WL 345493 (Fed. Cir. 2010) is misplaced. Like the actions here, *Confident* was a patent infringement action against a website publisher who implemented and operated reCAPTCHA v2 on its websites (*see Confident*, 2018 WL 3430539 at \*1-2); however, the similarities end there. In *Confident*, the court dismissed plaintiff's divided infringement theory as lacking any support because in the complaint "Google [was] only identified in reference to

17

https://www.google.com/recaptcha/intro/ as a website where information regarding ReCAPTCHA is available, and in a screenshot of Defendant's website showing a ReCAPTCHA matrix and underlying ReCAPTCHA script that mentions Google." *Id.* at *4. The dearth of divided infringement allegations in the *Confident* complaint—which did not allege or even reference joint enterprise, agency, contract, or receipt of a benefit or participation in an activity conditioned performance of method steps (*see* Ex. M at ¶¶9-10)—stand in stark contrast to the more than 40 paragraphs in the FAC cited above that support HDI's divided infringement claim.[10]

*Desenberg* is inapplicable because it was decided pre-*Akamai* and relied on *BMC*'s strict requirement of agency or a contract (*see Desenberg*, 2010 WL 345493, at *2 (citing *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007)), which is "no longer the governing law." *See Travel Sentry*, 877 F.3d at 1380–81. Further, unlike HDI, the *pro se Desenberg* plaintiff explicitly stated that he was *not* asserting any divided infringement theory and alleged only that defendant performed all of the steps by itself (even though the asserted methods required one step of the process to be performed by the "user" and one step to be performed by the "provider"). *Id.*

## II.    THE FAC SUFFICIENTLY PLEADS INDIRECT INFRINGEMENT

Cigna/BBB assert that HDI's indirect infringement claim fails because the FAC does not allege any entity directly infringes. This is not correct. HDI pleads that, to the extent Google is deemed the direct infringer because, for example, the reCAPTCHA v2 service is offered by Google and invokes Google's servers (as Defendants implicitly argue), Defendant induces Google. ¶¶65, 80. Likewise, HDI pleads that, to the extent end-users of Defendants' websites (or the end-user's browser) are deemed the direct infringer, Defendant induces that infringement. ¶¶66, 81. As set forth above, the FAC contains detailed factual allegations plausibly alleging that use of the

---

[10] Confident's subsequent amended complaint, though not as detailed as HDI's FAC, was not challenged before the case settled. *See* Ex. N.

reCAPTCHA v2 technology in Defendants' websites constitutes performance of the claimed methods. *See, supra*, Part I(A) (including the "calculating" step of the '141 Patent). HDI thus plausibly pleads an underlying direct infringement.

Defendants assert that HDI needed to allege that "the customer alone perform[s] every step of the asserted method claim." BBB Mot. at 16; *see also* Gap Mot. at 17. Yet joint infringement can be the predicated on direct infringement of an inducement claim. *See Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1369 (Fed. Cir. 2017). HDI alleges that Defendants direct or control end-users of their respective websites (and/or the end-users' browsers) to the extent the source code incorporated by each Defendants in its website is deemed to operate on or be executed by the end-user or its browser (rather than Defendants). ¶¶65-66, 80-81; *see* ¶¶20-21 (instructions to end-user), ¶ 40 (end-user's receipt of benefit conditioned on performing steps directed by Defendant); ¶22 (regarding '141 Patent claim 1 (a) & (b)) ("Defendant executes or directs or controls the browser to execute that code and computerized instructions" incorporated by Defendants); ¶¶ 24, 26, 28, 30, 32, 34 (regarding other claim elements).

Next, Gap complains that the FAC fails to adequately plead intent or knowledge of infringement. However, since at least receiving notice by filing of HDI's Original Complaint (¶56), Gap has knowingly induced infringement of and contributed to infringement of, and continues to knowingly induce and contribute to the infringement of at least claim 1 of the Patents-in-Suit. ¶¶67-68, 73, 82-83, 91. Post-suit knowledge is sufficient to allege knowledge. *See Frac*, 2019 WL 3818049, at *4. Further, HDI's indirect infringement allegations "incorporate by reference" the dozens of paragraphs of detailed allegations of direct infringement. *See* ¶64, 71, 79, 89. As set forth above, those paragraphs allege that Defendant took active steps to cause Google's server(s)/computer(s) to practice the claimed method steps, including implementing source code

and other computerized instructions in Defendant's website(s) that when executed by Defendant causes Google to elect and present an image-based or motion-based CAPTCHA, process the end-user's responses, and calculate or determine related information, as claimed in the Patents-in-Suit. HDI's allegations are sufficient. *See Promega Corp. v. Life techs. Corp.*, 773 F.3d 1338, 1351 (Fed. Cir. 2014), *rev'd on other grounds Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734 (2017) ("[I]nduce also encompasses the more broad concept of "to bring about, to cause.").

The cases cited by Gap are inapplicable because the allegations in those cases involved deficiencies not present here. *See Superior Indus. LLC v. Thor Global Enter. Ltd.*, 700 F.3d1287, 1296 (Fed. Cir. 2012) (no allegations of "***any*** facts" to support an inference of intent or knowledge); *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (only indirect infringement allegation was that "Defendants' [sic] have induced infringement of and/or contributorily infringed the Patent"); *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014) (no explanation of "how the marketing and selling activities of [defendant] actually induced third-parties to infringe the Asserted Patents"); *Google LLC v. Princeps Interface Technologies LLC*, 2020 WL 1478352, *4-5 (N.D. Cal. Mar. 26, 2020) (finding general and imprecise references to "instructional materials and/or services related to the Accused Instrumentalities" insufficient).

<u>**CONCLUSION**</u>

For all these reasons, HDI has pled more than enough facts and allegations to put each Defendant on notice of its infringement and to allow the Court to draw the reasonable inference that each Defendant is liable for its infringement. Defendants' Motions should be denied.

However, if this Court considers granting any part of any Defendant's Motion (and it should not), HDI respectfully request an opportunity to further amend its complaints.

DATED: August 17, 2020                          Respectfully submitted,


                                                */s/  Nicole E. Glauser*
                                                Andrew G. DiNovo
                                                Texas State Bar No. 00790594
                                                adinovo@dinovoprice.com
                                                Nicole E. Glauser
                                                Texas State Bar No. 24050694
                                                nglauser@dinovoprice.com
                                                **DINOVO PRICE LLP**
                                                7000 N. MoPac Expressway, Suite 350
                                                Austin, Texas  78731
                                                Telephone:  (512) 539-2626
                                                Telecopier:  (512) 539-2627

                                                ***Counsel for Plaintiff***
                                                ***Human Differential Intelligence LLC***

**CERTIFICATE OF SERVICE**

The undersigned hereby certify that on August 17, 2020 a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


*/s/ Nicole E. Glauser*
Nicole E. Glauser